IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00625-WDM-MJW

EVERETT J. WILSON,

Plaintiff,

v.

WARDEN KURTZ OF CCA, et al.,

Defendants.

---

**RECOMMENDATION ON
MOTION TO DISMISS FROM DEFENDANT KURTZ (Docket No. 36)
and
RECOMMENDATION THAT DEFENDANT STERLING CORRECTIONAL FACILITY
MEDICAL DEPARTMENT BE DISMISSED AS A PARTY TO THIS ACTION**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Walker D. Miller on July 6, 2007 (Docket No. 20).

The operative pleading is the pro se plaintiff's Prisoner's Third Amended

Complaint (Docket No. 33) in which plaintiff improperly incorporates his previous

(Second) Amended Complaint (Docket No. 10).  In those two pleadings, plaintiff

complains about the misplacement of his medical file during a transfer and his denial of

medical treatment at Huerfano County Correctional Facility ("HCCF") and Sterling

Correctional Facility.  More specifically, he asserts the following.

On March 1, 2006, he was transferred from Territorial Correctional Facility to

Arrowhead Correctional Facility.  When he was screened, he noticed that his medical

file, which was File #2, had nothing in it, and he had to tell them of his disabilities. There were no doctors at that facility's medical department, and plaintiff waited 1.5 months but never saw a doctor. Plaintiff showed his medical restriction to his case manager, Thompson, who responded that there was nothing in plaintiff's medical file to back it up and that plaintiff was to do the program or she was going to transfer him to a level 3 facility for punishment and take 4 days a month away from plaintiff. Plaintiff then talked to the head case manager who gave the same response.

Three days later, on April 16, 2006, plaintiff was transferred to HCCF with the same blank File #2. Plaintiff was told he had to work as there was nothing in his medical file saying he could not work. At that time, the medical department put plaintiff on temporary unassigned.

In June 2006, P.A. Vigil called plaintiff to the medical department. She found plaintiff's File #1 and said "someone screwed up she said I should of never came to C.C.A. She told me at that time she was going to order me oxygen." (Docket No. 10 at 4). Nevertheless, plaintiff never received the oxygen. The doctor called plaintiff in a couple of weeks later and again ordered plaintiff oxygen, but once again plaintiff never received it.

Two months later, the doctor called plaintiff back in and asked if plaintiff ever received the oxygen he ordered. Plaintiff told him no, and the doctor said he would order it again and that the Department of Corrections ("DOC") had to approve it. Again, it was denied.

On January 12, 2007, plaintiff wrote a grievance, and it came back saying

plaintiff was scheduled for a pulmonary function test.  The test was then done on January 19, 2007, and at that time, the person told plaintiff she could tell he needed oxygen just by looking at his file.  On January 22, 2007, plaintiff filed a Step 2 grievance, and it came back on February 28, 2007, saying the pulmonologist prescribed oxygen, and they were waiting for approval from DOC.  DOC approved it, and plaintiff waited a month and asked his case manager, Mrs. Montez.  She called the medical department and was told the warden would not approve it.  The pulmonologist also told the HCCF medical department to move plaintiff to a lower altitude, but it was not done.  Plaintiff asked his case manager what he was supposed to do, and she told plaintiff to talk to the DOC liaison, defendant Maines.  Plaintiff did so, and Maines said it was plaintiff's case manager's job.  The case manager then said that was a lie.  The next day (March 15, 2007) Maines called plaintiff in and threatened him, saying they were going to get plaintiff's oxygen concentrator, but they were not going to transfer him because they had a contract on him and would lose money if he was moved.  She then said if plaintiff did anything to go over her head, she would transfer him to Oklahoma.  Plaintiff's case manager and Mr. David were present when plaintiff was threatened.  That same day, plaintiff wrote a grievance on Maines' response.  On April 17, 2007, the grievance came back with nothing but lies on it.  Plaintiff showed it to his case manager, who said it was a lie and Maines did in fact threaten plaintiff.

Plaintiff is still having problems.  He wrote a kite to the medical department on April 22, 2007, saying the oxygen concentrator only works in his room and that he needs to have a tank with him when he walks, which is when his oxygen level drops.  In

addition, Dr. Shapiro told the people in the medical department to move plaintiff to a lower altitude "ASAP," yet plaintiff was never moved. Plaintiff is still suffering every day.

Plaintiff raised three claims for relief in his Second Amended Complaint. Claim one was dismissed by Judge Weinshienk because it sought relief only against the DOC, which was dismissed as a defendant. (Docket No. 11 at 4). In his second claim (Docket No. 10 at 11-12), plaintiff complains about the Warden's denial of physician-prescribed oxygen that was prescribed over a ten-month period, which plaintiff claims was deliberate indifference. In his third claim (Docket No. 10 at 13), plaintiff complains that he was held at HCCF knowing he needed oxygen. Plaintiff asserts that he was prescribed oxygen several times over a ten-month period and was told he could not have it at that facility. Therefore, they should have transferred him to an equipped facility. Plaintiff also apparently asserts a violation of an administrative regulation (AR 950-2). He seeks the following relief in his Second Amended Complaint: "Pain + suffering, compensatory damages, punitive damages Declatory [sic] and Injunctive Relief." (Docket No. 10 at 16).

Prior to the filing of plaintiff's Third Amended Complaint, the only named defendants remaining were Warden Kurtz and Liaison Maines.[1] In the Third Amended Complaint, which is far from a model pleading, plaintiff lists five additional defendants:

---

[1]Pursuant to an Order issued by Judge Weinshienk on May 31, 2007 (Docket No. 11), defendants Aristedes W. Zavaras, Correction Corp. of America, and the Colorado Department of Corrections were dismissed as parties to this action, leaving two defendants remaining, namely Warden Kurtz and DOC Liaison Maines.

Sterling Correctional Facility ("SCF") Medical Department; Beverly Dowis, Medical

Director for SCF; Warden Kevin Milyard, SCF; Un-named Medical Director for the

Colorado DOC; and the Colorado Medicaid Insurance provider for the DOC.[2]  (Docket

No. 33 at 2).

In addition, plaintiff lists four claims in that pleading.  In **Claim One**, he asserts

medical deliberate indifference by all defendants, asserting they had knowledge that he

had need of oxygen (portable and fixed) as well as consistent breathing treatments and

an air-conditioned environment, yet they intentionally interfered with medical orders in

violation of his Eighth Amendment rights.  In **Claim Two**, plaintiff asserts that all

defendants practice medicine without a license or in contravention to their oath of

practice.  He asserts that defendants "carry out the spoken policy of medical denial of

treatment rather than the written policy in the administrative regulations."  (Docket No.

33 at 4).  In **Claim Three**, plaintiff asserts that medical records and DOC files were

sanitized at Sterling Correction Facility and at the contract facilities in which he was

housed.  He claims that after being transported from Walsenberg, he was denied

medications sent with him, and thereafter DOC staff sanitized the records sent with him

as to prescribed treatment and care, which he asserts is "active facility policy by act or

omission and highly sanctioned . . . ."  In **Claim Four**, plaintiff alleges a "conspiracy &

---

[2]By separate order, this court will be directing the service of defendants Dowis
and Milyard.  The court, however, cannot direct service upon defendants Un-named
Medical Director for the Colorado Department of Corrections and the Colorado
Medicaid Insurance provider for the DOC until plaintiff identifies those defendants, and
with respect to the latter defendant, provides the court with an address at which the
defendant can be served.

Coersion [sic] by all defendants" to refuse him "medical care and treatment required to abate his serious medical needs." (Docket No. 33 at 7).

In the Third Amended Complaint (Docket No. 33), plaintiff seeks declaratory, injunctive, and monetary relief, including $10,000 compensatory damages per person, $1 million for pain and suffering, and $250,000 in punitive damages. (Docket No. 33 at 8).

Now before the court for a report and recommendation is a Motion to Dismiss from Defendant Kurtz (Docket No. 36) in which Kurtz seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff fails to state a constitutional violation; (2) plaintiff fails to allege any personal participation on the part of Kurtz; (3) even assuming plaintiff can state a violation and that Kurtz personally participated in the violation, plaintiff cannot establish that Kurtz acted with the requisite deliberate indifference necessary to sustain a claim against him; (4) plaintiff fails to present any causal relationship to any alleged damage with the conduct of Kurtz; and (5) plaintiff's conspiracy claim fails as a matter of law because it contains insufficient, specific non-conclusory allegations. Plaintiff filed a Response to Motion to Dismiss from Defendant Kurtz (Docket No. 48) which is non-responsive to the defendant's motion. Defendant Kurtz filed a Reply (Docket No. 51). Plaintiff then filed a Second Response (Docket No. 52) in which he states that he will present evidence and witnesses before a jury, that Warden Kurtz was personally involved, and that plaintiff would like to have his day in court to present his evidence.

The court has reviewed the motion, the response, reply, and second response

and has considered applicable Federal Rules of Civil Procedure, case law, and statutes, as well as the court's file. The court now being fulling informed makes the following findings, conclusions of law, and recommendations.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S.Ct. At 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of

mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S.Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. <u>See Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." <u>Id.</u>

Defendant Kurtz's first four bases for dismissal are pretty much interconnected. Citing examples (see Docket No. 36 at 3), Kurtz first contends that the plaintiff's various complaints contain only general allegations against him. He further asserts that more importantly, plaintiff does not allege in any of his pleadings any contact with Kurtz or that plaintiff is aware of any documents establishing that Kurtz took any specific action to prevent plaintiff from receiving his desired treatment. Kurtz contends that plaintiff's allegations simply do not show with particularity facts and law establishing the inference that Kurtz violated plaintiff's constitutional rights. Instead, defendant asserts that plaintiff seeks to hold him liable simply because he was the Warden of HCCF.

Similarly, Kurtz next asserts that plaintiff has failed to establish or even allege any personal participation by Kurtz in any of his allegations of inadequate medical care

during his incarceration.  Kurtz asserts that he simply had nothing specifically to do with plaintiff's medical treatment.  He claims "[p]laintiff has failed to allege any facts that would establish that Warden Kurtz, as a non-medical professional, personally participated, exercised control or direction, or failed to properly supervise the medical staff responsible for the alleged constitutional violations related to the medical care Plaintiff received or did not receive during his incarceration at HCCF.  In fact, Plaintiff alleges many conversations with numerous individuals other than Warden Kurtz, and as a non-medical professional, Warden Kurtz could not dictate the course of Plaintiff's treatment any more than Plaintiff could."  (Docket No. 36 at 4-5).  Kurtz contends that he cannot be liable under a *respondeat superior* theory merely because he held a position of authority.

Next, Kurtz asserts that plaintiff fails to allege any facts to establish that Kurtz acted with deliberate indifference.  He contends that "[p]laintiff has offered insufficient factual allegations to support his claim Warden Kurtz, a non-medical professional, withheld medical treatment or otherwise denied Plaintiff any specific medical care. Plaintiff presents no allegations that Warden Kurtz personally participated in any medical treatment decision respecting Plaintiff or personally observed Plaintiff in need of any specific medical attention."  (Docket No. 36 at 6).  Furthermore, Kurtz asserts that "as a non-medical professional, [he] may rely on the judgment of health care providers since he has no medical training. . . .  Any dispute with Plaintiff's desired treatment would be determined by the medical professionals at HCCF, not Warden Kurtz."  (Docket No. 36 at 6).  Moreover, Kurtz asserts that "Plaintiff cannot establish

Warden Kurtz acted with deliberate indifference to his serious medical needs since

Plaintiff has failed to establish that any delay in receiving the oxygen resulted in

substantial harm." (Docket No. 36 at 7).

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir.

1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates. "[T]here is no concept of strict
> supervisor liability under § 1983." . . . "This does not mean that a
> supervisor may not be liable for injuries caused by the conduct of one of
> his subordinates. It does mean that his liability is not vicarious, that is,
> without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights. To
> establish supervisor liability under § 1983, "it is not enough for a plaintiff
> merely to show a defendant was in charge of other state actors who
> actually committed the violation. Instead, . . . the plaintiff must establish
> 'a deliberate, intentional act by the supervisor to violate constitutional
> rights.'" . . . In short, the supervisor must be personally "involved in the
> constitutional violation," and a "sufficient causal connection" must exist
> between the supervisor and the constitutional violation." . . . .

> In order to establish a § 1983 claim against a supervisor for the
> unconstitutional acts of his subordinates, a plaintiff must first show the
> supervisor's subordinates violated the constitution. Then, a plaintiff must
> show an "affirmative link" between the supervisor and the violation,
> namely the active participation or acquiescence of the supervisor in the
> constitutional violation by the subordinates. . . . In this context, the
> supervisor's state of mind is a critical bridge between the conduct of a
> subordinate and his own behavior. Because "mere negligence" is not
> enough to hold a supervisor liable under § 1983, a plaintiff must establish
> that the supervisor acted knowingly or with "deliberate indifference" that a
> constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted). Furthermore, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Here, although the amended complaints are not the most artfully drawn, reading them liberally and in the light most favorable to the plaintiff, this court finds that the plaintiff has alleged the requisite personal involvement by Kurtz and has adequately stated an Eighth Amendment violation by Kurtz. More specifically, plaintiff avers in his Second Amended Complaint (Docket No. 10), which is incorporated into his Third Amended Complaint, that his doctor, the P.A., and the "pulmonologist" repeatedly ordered oxygen for him; after considerable time, DOC eventually approved it; plaintiff then waited several more weeks; his case manager, Mrs. Montez, then called the medical department and was told that the Warden would not approve it; and plaintiff is "still . . . suffering every day." (Docket No. 10 at 5). At least at this early stage of the proceedings, this court finds that the amended complaints contain enough facts to state a claim to relief that is plausible on its face as against defendant Kurtz.

Defendant's final argument is that the plaintiff's claims contain insufficient specific and non-conclusory allegations to demonstrate any conspiracy existed between the defendants. This court agrees with this contention. With regard to conspiracy claims:

A claim of conspiracy requires plaintiff [to] demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th

Cir. 1994). Plaintiff need not offer direct evidence. Rather, conspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds. See Adickes v. Kress & Co., 398 U.S. 144, 154 . . . (1970). However, conclusory allegations that defendants acted "in concert," or "conspired" without specific factual allegations to support such assertions are insufficient. Aniniba v. City of Aurora, 994 F. Supp. 1293, 1298 (D. Colo. 1998) (Miller, J.).

Merritt v. Hawk, 153 F. Supp.2d 1216, 1225 (D. Colo. 2001). See Hunt v. Bennett, 17

F.3d 1263, 1266 (10th Cir. 1994) (plaintiff failed "to allege specific facts showing

agreement and concerted action among [the defendants]. 'Conclusory allegations of

conspiracy are insufficient to state a valid § 1983 claim.'"). Here, in Claim IV of the

Third Amended Complaint, plaintiff alleges a conspiracy but does not aver any specific

facts showing agreement and concerted action among any or all of the defendants.

Plaintiff merely states the following:

Claim IV: Conspiracy & Coersion [sic] by all defendants.

SEE: C.R.S.A. 18-2-201(1)ff; 18-2-202 (1)ff; Complicity-

C.R.S.A. 18-I-603; 42 U.S.C.A. 1985

FACTS:
1. Under the Colorado and Federal Statutes, IBID, the defendants, et al, acted jointly and severelly [sic], through written or spoken policy; either acted or refused to act, or in contravention of written or spoken policy has refused petitioner medical care and treatment required to abate his serious medical needs.
2. Under the premise that, Ignorance of the Law is no excuse, defendants, et al, had reason to know or should have known that conspirying [sic] or being complicite [sic] thereto is a criminal conduct pursuant to the statutes, IBID.
3. Colorado Governmental Officials and their agents, advance their agenda, Id., against persons at medical risk in the D.O.C. and agent Contract Facilities, to deprive those at medical risk or required Medical Treatment needs, with the thought of impunity pursuant to the Eleventh Amendment in their Official Capacity. However, Official Persons and

> entities as persons who flaunt criminality pursuant to the Eleventh
> Amendment of the United States Constitution as "untouchables"
> knowingly, or having reason to know the law, as trained professionals, do
> so in their personal and not official capacity and thereafter are culpable in
> their personal capacity.

(Docket No. 33 at 7).  It is thus recommended that this conspiracy claim be dismissed without prejudice.

Finally, the court notes that in the Third Amended Complaint, plaintiff adds as a defendant the Sterling Correctional Facility Medical Department.  The court *sua sponte* recommends dismissal of that defendant inasmuch as the medical department is not a "person" under 42 U.S.C. § 1983.  See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (New Jersey prison medical department could not be sued under § 1983 because it is not a "person"); Howard v. Department of Corrections, 2007 WL 2914233 (D. Colo. Sept. 28, 2007) (Magistrate Judge Boland found that the Department of Corrections Medical Department of Sterling Correctional Facility did not appear to a be a person subject to suit in that § 1983 action.).

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that the Motion to Dismiss from Defendant Kurtz (Docket No. 36) be granted in part and denied in part.  More specifically, it is recommended that the motion be granted with respect to the plaintiff's claim of conspiracy in Claim IV of the Third Amended Complaint and that such claim be dismissed without prejudice.  In all other respects, it is recommended that the motion be denied.  It is further

**RECOMMENDED** that defendant Sterling Correctional Facility Medical Department be dismissed as a party to this action.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  January 29, 2008                    s/ Michael J. Watanabe
      Denver, Colorado                    Michael J. Watanabe
                                            United States Magistrate Judge