IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00625-WDM-MJW

EVERETT J. WILSON,

Plaintiff,

v.

WARDEN KURTZ OF CCA, et al.,

Defendants.

---

RECOMMENDATION ON
MOTION TO DISMISS (Docket No. 71)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by District Judge Walker D. Miller on July 6, 2007 (Docket No. 20).

**Plaintiff's Allegations**

The operative pleading is the pro se plaintiff's Prisoner's Third Amended Complaint (Docket No. 33) in which plaintiff improperly incorporates his previous (Second) Amended Complaint (Docket No. 10). In those two pleadings, plaintiff complains about the misplacement of his medical file during a transfer and his denial of medical treatment at Huerfano County Correctional Facility ("HCCF") and Sterling Correctional Facility ("SCF"). More specifically, he asserts the following.

On March 1, 2006, he was transferred from Territorial Correctional Facility to Arrowhead Correctional Facility. When he was screened, he noticed that his medical

file, which was File #2, had nothing in it, and he had to tell them of his disabilities. There were no doctors at that facility's medical department, and plaintiff waited 1.5 months but never saw a doctor. Plaintiff showed his medical restriction to his case manager, Thompson, who responded that there was nothing in plaintiff's medical file to back it up and that plaintiff was to do the program or she was going to transfer him to a level 3 facility for punishment and take 4 days a month away from plaintiff. Plaintiff then talked to the head case manager who gave the same response.

Three days later, on April 16, 2006, plaintiff was transferred to HCCF with the same blank File #2. Plaintiff was told he had to work as there was nothing in his medical file saying he could not work. At that time, the medical department put plaintiff on temporary unassigned.

In June 2006, P.A. Vigil called plaintiff to the medical department. She found plaintiff's File #1 and said "someone screwed up she said I should of never came to C.C.A. She told me at that time she was going to order me oxygen." (Docket No. 10 at 4). Nevertheless, plaintiff never received the oxygen. The doctor called plaintiff in a couple of weeks later and again ordered plaintiff oxygen, but once again plaintiff never received it.

Two months later, the doctor called plaintiff back in and asked if plaintiff ever received the oxygen he ordered. Plaintiff told him no, and the doctor said he would order it again and that the Department of Corrections ("CDOC") had to approve it. Again, it was denied.

On January 12, 2007, plaintiff wrote a grievance, and it came back saying plaintiff was scheduled for a pulmonary function test. The test was then done on January 19,

2007, and at that time, the person told plaintiff she could tell he needed oxygen just by looking at his file. On January 22, 2007, plaintiff filed a Step 2 grievance, and it came back on February 28, 2007, saying the pulmonologist prescribed oxygen, and they were waiting for approval from CDOC. CDOC approved it, and plaintiff waited a month and asked his case manager, Mrs. Montez. She called the medical department and was told the warden would not approve it. The pulmonologist also told the HCCF medical department to move plaintiff to a lower altitude, but it was not done. Plaintiff asked his case manager what he was supposed to do, and she told plaintiff to talk to the CDOC liaison, defendant Maines. Plaintiff did so, and Maines said it was plaintiff's case manager's job. The case manager then said that was a lie. The next day (March 15, 2007) Maines called plaintiff in and threatened him, saying they were going to get plaintiff's oxygen concentrator, but they were not going to transfer him because they had a contract on him and would lose money if he was moved. She then said if plaintiff did anything to go over her head, she would transfer him to Oklahoma. Plaintiff's case manager and Mr. David were present when plaintiff was threatened. That same day, plaintiff wrote a grievance on Maines' response. On April 17, 2007, the grievance came back with nothing but lies on it. Plaintiff showed it to his case manager, who said it was a lie and Maines did in fact threaten plaintiff.

Plaintiff is still having problems. He wrote a kite to the medical department on April 22, 2007, saying the oxygen concentrator only works in his room and that he needs to have a tank with him when he walks, which is when his oxygen level drops. In addition, Dr. Shapiro told the people in the medical department to move plaintiff to a lower altitude "ASAP," yet plaintiff was never moved. Plaintiff is still suffering every day.

Plaintiff raised three claims for relief in his Second Amended Complaint. Claim one was dismissed by Judge Weinshienk because it sought relief only against the CDOC, which was dismissed as a defendant. (Docket No. 11 at 4). In his second claim (Docket No. 10 at 11-12), plaintiff complains about the Warden's denial of physician-prescribed oxygen that was prescribed over a ten-month period, which plaintiff claims was deliberate indifference. In his third claim (Docket No. 10 at 13), plaintiff complains that he was held at HCCF knowing he needed oxygen. Plaintiff asserts that he was prescribed oxygen several times over a ten-month period and was told he could not have it at that facility. Therefore, they should have transferred him to an equipped facility. Plaintiff also apparently asserts a violation of an administrative regulation (AR 950-2). He seeks the following relief in his Second Amended Complaint: "Pain + suffering, compensatory damages, punitive damages Declatory [sic] and Injunctive Relief." (Docket No. 10 at 16).

Prior to the filing of plaintiff's Third Amended Complaint, the only named defendants remaining were Warden Kurtz and Liaison Maines.[1] In the Third Amended Complaint, which is far from a model pleading, plaintiff listed five additional defendants: Sterling Correctional Facility ("SCF") Medical Department; Beverly Dowis, Medical Director for SCF; Warden Kevin Milyard, SCF; Un-named Medical Director for the CDOC; and the Colorado Medicaid Insurance provider for the CDOC. (Docket No. 33 at 2).

---

[1] Pursuant to an Order issued by Judge Weinshienk on May 31, 2007 (Docket No. 11), defendants Aristedes W. Zavaras, Correction Corp. of America, and the Colorado Department of Corrections were dismissed as parties to this action, leaving two defendants remaining, namely Warden Kurtz and CDOC Liaison Maines.

In addition, plaintiff lists four claims in that pleading. In **Claim One**, he asserts medical deliberate indifference by all defendants, asserting they had knowledge that he had need of oxygen (portable and fixed) as well as consistent breathing treatments and an air-conditioned environment, yet they intentionally interfered with medical orders in violation of his Eighth Amendment rights. In **Claim Two**, plaintiff asserts that all defendants practice medicine without a license or in contravention to their oath of practice. He asserts that defendants "carry out the spoken policy of medical denial of treatment rather than the written policy in the administrative regulations." (Docket No. 33 at 4). In **Claim Three**, plaintiff asserts that medical records and CDOC files were sanitized at SCF and at the contract facilities in which he was housed. He claims that after being transported from Walsenberg, he was denied medications sent with him, and thereafter CDOC staff sanitized the records sent with him as to prescribed treatment and care, which he asserts is "active facility policy by act or omission and highly sanctioned . . . ." In **Claim Four**, plaintiff alleges a "conspiracy & Coersion [sic] by all defendants" to refuse him "medical care and treatment required to abate his serious medical needs." (Docket No. 33 at 7).

In the Third Amended Complaint (Docket No. 33), plaintiff seeks declaratory, injunctive, and monetary relief, including $10,000 compensatory damages per person, $1 million for pain and suffering, and $250,000 in punitive damages. (Docket No. 33 at 8).

Following a report and recommendation issued by this court on January 29, 2008 (Docket No. 56), Judge Miller issued an Order (Docket No. 61) in which the plaintiff's

claim of conspiracy against all parties (Claim Four of the Third Amended Complaint) was dismissed, but all other claims remained pending. In addition, defendant SCF Medical Department was dismissed as a party to this action. Therefore, the remaining defendants are Warden Kurtz; Liaison Maines; Beverly Dowis, Medical Director for SCF; Warden Kevin Milyard, SCF; Un-named Medical Director for the CDOC; and the Colorado Medicaid Insurance provider for the CDOC. The court, however, has not been able to direct service upon the latter two defendants because the plaintiff has not identified them and has not provided an address at which the latter defendant can be served. Defendant Kurtz filed an Answer on March 5, 2008 (Docket No. 66). Defendant Maines has not yet been served by the U.S. Marshal.[2]

**Defendants' Motion to Dismiss**

Now before the court for a report and recommendation is a Motion to Dismiss filed by defendants Milyard and Dowis (Docket No. 71) in which they seek dismissal of the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) failure to state a claim due to lack of personal participation and (2) failure to exhaust administrative remedies with respect to claims two and three of the Third Amended Complaint. The pro se plaintiff, who is no longer incarcerated, did not file a response to the motion.

The court has carefully reviewed the motion and the amended pleadings and has

---

[2]Upon close review of the docket while preparing this report and recommendation, this court discovered that defendant Maines was terminated as a defendant on the docket when the confusing Third Amended Complaint was filed. Therefore, defendant Maines was never served. The Clerk's Office has now reactivated Maines as a defendant on the docket sheet, and a service order will issue shortly directing service by the U.S. Marshal.

considered applicable Federal Rules of Civil Procedure, case law, and statutes, as well as the court's file. The court now being fulling informed makes the following findings, conclusions of law, and recommendation.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S.Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007) (quoting Bell Atlantic Corp., 127 S.Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Personal Participation**

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

>In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted). Furthermore, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The moving defendants, Milyard and Dowis, assert that the Third Amended Complaint contains no allegations which, if proven, would show their personal participation, and, therefore, his claims against them should be dismissed. More specifically, they assert the following. Defendant Milyard was the Warden of SCF and defendant Dowis was the Health Services Administrator at SCF during the time plaintiff's claims arose. Nevertheless, plaintiff allegedly has failed to allege any facts that show that either defendant had any role in, or knowledge of, the denial of plaintiff's prescribed treatment or the sanitation of his CDOC and medical files. In addition, he allegedly has not alleged any facts which show that these two defendants practice medicine without a medical license. There allegedly are also no allegations indicating they participated in, or acquiesced to, the alleged violations of which plaintiff complains or any allegations that these two defendants had any actual knowledge of the violations

complained of, either before or after they occurred.

This court agrees with defendants' assertions. Even reading the amended complaints liberally and in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged the requisite personal involvement by defendants Milyard and Dowis, nor has he adequately stated an Eighth Amendment violation by these two defendants. The only mention of these two defendants in the body of the Third Amended Complaint is in Claim Two in which plaintiff merely provides a rambling, non-specific discourse about unspecified defendants practicing medicine without a license or in contravention of their oath of practice. In Claim Two, plaintiff fails to make any specific allegations concerning any actions or inaction regarding his own medical care and treatment. Furthermore, with regard to the moving defendants, plaintiff merely states:

> This practice is know to be, or is believed to have been committed by the Medical team at the Sterling Correctional Facility, by Order of, Warden Kevin Milyard, either through is written or spoken policy; (2) by the Director of Medical Services, Beverly Dowis and carried out by the medical staff either licenced or unlicenced physicians or physicians assistants under said administrative policy of the Sterling Correctional Facility.

(Docket No. 33 at 6). The court thus finds that plaintiff has not alleged the requisite personal involvement of these two defendants, and it is thus recommended that defendants' motion to dismiss be granted.

**Non-Exhaustion of Claims Two and Three**

The Prison Litigation Reform Act of 1995 ("PLRA"), *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. This exhaustion requirement "is

mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Therefore, defendants do not waive the exhaustion defense by waiting to raise it, even on the eve of trial. Id.

Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth, 532 U.S. at 741, n.6. "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." Beaudry, 331 F.3d at 1167.

Pursuant to Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007), "the failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 127 S.Ct. at 921. Furthermore, the Tenth Circuit has held that as an affirmative defense, exhaustion must be raised and proven by the defendants. Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

The CDOC has a multi-step grievance process. If an inmate cannot resolve a problem through dialogue and discussion, he is to follow a formal three-step written

grievance procedure in order to exhaust administrative remedies. See Administrative Regulation No. 850-04; Aff. of Anthony Defs.' Ex. B. The moving defendants assert that the plaintiff has not filed a Step 1, 2, or 3 grievance concerning his allegations that defendants practiced medicine without a license (Claim Two) and that defendants sanitized his DOC files and medical records (Claim Three). According to the undisputed affidavit of Anthony DeCesaro, a CDOC Step 3 Grievance Officer, he reviewed the records maintained by the CDOC concerning Step 3 grievances, and:

> There is no record that [plaintiff] filed a Step 3 grievance concerning Defendant Kevin Milyard or Defendant Beverly Dowis practicing medicine without a medical license or sanitizing his CDOC and medical files. Thus, it appears that [plaintiff] did not exhaust his administrative remedies with regards to these issues.
>
> []. [Plaintiff did file a Step 3 grievance regarding the misplacement of his medical file during his transfer from one facility to another. However, the request was denied because [plaintiff] failed to request relief. Because [plaintiff] failed to request relief, I was not able to make a determination of the facts or determine what would satisfy his grievance. Thus, with regards to [plaintiff's] grievance concerning the misplacement of his medical file, he failed to follow grievance procedures and consequently failed to exhaust his administrative remedies pursuant to AR 850-04(IV)(C)(1)(2).

(Docket No. 71-2 at 2, ¶¶ 10, 11). Based upon this affidavit, this court finds that the plaintiff has not exhausted his administrative remedies with regard to claims two and three and thus recommends that defendants' motion to dismiss those two claims be granted pursuant to 42 U.S.C. § 1997e(a).

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that the Motion to Dismiss filed by defendants Milyard and Dowis (Docket No. 71) be **granted**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: June 12, 2008  
Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge